IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:21-cv-00059-NKM |
| | ) | |
| LIBERTY UNIVERSITY, INC., *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LIBERTY UNIVERSITY, INC.'s**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Liberty University, Inc. ("Liberty" or the "University"), by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states as follows in support of its motion to dismiss (the "Motion") Counts I, III and IV of Plaintiff's Complaint (ECF No. 1).

**INTRODUCTION**

Plaintiff alleges that she was sexually assaulted by a fellow Liberty student while visiting his off-campus apartment the night before Halloween in 2020. In the ensuing months, University officials in charge of responding to reports of sexual assault reached out to Plaintiff on several occasions and met with her to talk about her options for receiving supportive measures and for pursuing a claim against her alleged assailant. Plaintiff initiated a formal claim under Liberty's disciplinary process against her alleged attacker. Rather than engage in that process, however, Plaintiff retained counsel and filed this lawsuit.

Plaintiff's claims against Liberty fall into two categories: (i) specific (though inaccurate) allegations regarding Liberty's response to Doe's alleged sexual assault on October 30, 2020; and (ii) conclusory, non-specific allegations regarding Liberty's supposed historical response to sexual

assaults involving other, unnamed students.  This motion to dismiss is directed to the latter category of claims.

As to the first category, Doe complains in Counts II and VII of her Complaint that Liberty's response to her sexual assault demonstrated deliberate indifference and/or retaliation under Title IX of the Education Act of 1972 ("Title IX").  To be sure, Liberty will vigorously contest these claims on the merits.  Doe's Complaint contains numerous misstatements and material omissions regarding Liberty's response to her alleged assault and Plaintiff's participation in that process.  At the appropriate phase of this litigation, Liberty will present evidence to correct the record and demonstrate that its response to Plaintiff's report of assault was anything but "deliberately indifferent."  In fact, Liberty's response fully complied with Title IX and the University's policies.  However, at this point in the case, Liberty is confined to defending Plaintiff's claims on legal – not factual – grounds.  The inaccurate and misstated allegations in Counts II and VII of the Complaint cannot be proven, but they do at least state viable claims under Title IX for deliberate indifference and retaliation as pled by Plaintiff in her Complaint.

The same cannot be said for Counts I, III and IV of the Complaint.  Each of those counts attempts to state a claim against Liberty based upon generalized and unsubstantiated allegations about Liberty's supposed approach to sexual assaults on its campus over an undefined period prior to Doe's alleged assault in October of 2020.  Both the Fourth Circuit Court of Appeals and other courts within this District have rejected such "pre-assault" claims under Title IX.  To state a private cause of action under Title IX, a plaintiff must show that a college or university received "actual notice" of a specific assault or sexual harassment but failed to adequately respond.  Thus, the question is not how Liberty responded generally to sexual assault over a period of years, but how Liberty specifically responded to reports that Plaintiff was assaulted on October 30, 2020.

Similarly, a plaintiff asserting negligence for a college's failure to protect her from another student's attack must plead specific facts to show that the college had reason to foresee the particular attack.  Generalized awareness of reports of alleged assaults involving other students does not suffice to put an institution on notice of a specific assault such that it has a legal duty to intervene.

Because Doe's "pre-assault" claims under Title IX and common law negligence are not legally tenable, the Court should dismiss those counts of the Complaint with prejudice.

## PERTINENT ALLEGATIONS[1]

Jane Doe is a student at Liberty who is on track to graduate in 2022.  (Compl. ¶ 7.)  She claims that, on October 30, 2020, a fellow Liberty student drugged and raped her in his off-campus apartment.  *Id.*, ¶¶ 2, 13-18.   Shortly thereafter, when Doe was unable to participate in her unspecified team's practice, her coach reported her condition to Liberty's Title IX office.[2] *Id.,* ¶¶ 29-30*.*  A representative from the Title IX office promptly reached out to Doe, and Doe reported that she had been sexually assaulted, though she did not initially name her alleged attacker.  *Id.,* ¶¶ 30, 33-34.  Liberty's Title IX office followed up again with Doe after it received a report identifying the alleged assailant, but Doe still did not want to confirm her alleged attacker's identity or proceed with a formal complaint.  *Id.,* ¶¶ 34-35*.*  Several months later, when Doe decided that she would disclose the identity of her purported assailant, Doe had a lengthy meeting with a staff member in the Title IX office.  *Id.*   During that meeting, the staff member provided written

---

[1] The Pertinent Allegations are derived from the Complaint and are accepted as true only for the purposes of Liberty's Motion to Dismiss.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] Liberty construes Doe's references to the "Title IX Office" to refer to Liberty's Office of Equity and Compliance ("OEC"), which is the department at Liberty that responds to reports of sexual harassment in accordance with Title IX.  For the sake of consistency, this memorandum will also refer to the OEC as Liberty's "Title IX office."

guidance and discussed various options available to Doe under Liberty's Title IX-related policies. *Id.,* ¶¶ 36-37. Liberty initiated a formal grievance process based upon Doe's claims against her alleged assailant. *Id.,* ¶ 38. Because the incident occurred off-campus (and beyond Liberty's "jurisdiction" under Title IX regulations), the grievance process moved forward under Liberty's student conduct code, and not under Title IX.[3] *Id.,* ¶¶ 39, 104; and at Ex. A, pp. 7-8.

The Complaint does not detail what happened during Liberty's investigation of Doe's claim of assault or what was the outcome of that proceeding. Without stating specifics, however, Doe alleges that Liberty failed to appropriately investigate or address the acts of sexual violence perpetrated against her. *Id.,* ¶ 58. Doe generally alleges that Liberty discouraged her from pursuing a formal complaint, that her alleged assailant went unpunished, that Liberty did not provide a safety plan or other accommodations to Doe, and that Liberty did not follow the procedural requirements set forth under Title IX. *Id.,* ¶¶ 56-60. Doe concludes that Liberty was deliberately indifferent to its obligations under Title IX. *Id.,* ¶ 61. She also alleges that Liberty "stalled the process," even though she admits that "there were times when Plaintiff was less responsive to the Title IX office." *Id.,* ¶¶ 43, 102. Doe also avers that Liberty retaliated against her when, after learning that she planned to pursue litigation against the University, the director of an internship program in which Doe was participating terminated her involvement in the program. *Id.*, ¶¶ 44-48.

Doe also alleges that Liberty historically has dissuaded victims of sexual assault from reporting and pursuing claims under Title IX by "weaponizing" its student honor code, called the

---

[3] Title IX regulations do not apply to alleged sexual assaults that occur off-campus and outside of university-sponsored programs. 34 C.F.R. §§ 106.44(a), 106.45(b)(3)(i). However, because Liberty strictly prohibits sexual assault and takes such allegations very seriously, Liberty will, upon a complainant's request, pursue such allegations under the appropriate student honor code (which incorporates Liberty's Title IX policies and follows the same process as a Title IX claim). This is simply a matter of form over function, which Plaintiff misstates.

"Liberty Way," and by failing to adhere to its written policies related to Title IX. *Id.,* ¶¶ 68-70. After detailing various provisions of the Liberty Way and Liberty's Discrimination, Harassment and Sexual Misconduct Policy  (*Id.,* ¶¶ 71-85), Doe alleges – again without stating specifics – that victims who reported sexual assaults to Liberty were urged to withdraw their reports lest they be punished for violations of the Liberty Way. *Id.,* ¶ 86-89.  Doe does not allege that Liberty did any of these things in her matter.

Based on these allegations, Doe asserts five causes of action against Liberty.  In "Count I: Pre-Assault Deliberate Indifference/Hostile Environment," Doe alleges that Liberty had knowledge prior to Doe's assault on October 30, 2020, that its policies and procedures were enabling on-campus rapes and sexual assaults.  *Id.,* ¶ 107.  She alleges both that Liberty had specific policies "to suppress complaints of sexual assault," and that Liberty "ignored these policies," causing harm to Plaintiff. *Id.,* ¶¶ 108-09.

In "Count II: Post Assault Deliberate Indifference," Doe alleges that, following the alleged assault on October 30, 2020, Liberty failed to take any action, destroyed evidence of Plaintiff's assault, and issued sanctions against Doe. *Id.,* ¶¶ 111-13.

Doe's third count, styled "Count III: Hostile Environment," appears to be a restatement of her first count.  Doe again alleges that Liberty's weaponization of the Liberty Way and pattern of favoring male assailants over female victims created a "sexually hostile environment" on the Liberty campus.  *Id.,* ¶ 115.

The fourth count of the Complaint is for "Negligence," and Doe alleges that, through the "dangerous environment it created for students," Liberty made Doe's injuries more likely to occur and harder to prosecute.  *Id.,* ¶¶ 177-119.

Counts V and VI of the Complaint allege claims for assault and battery against the student whom Doe alleges assaulted her, and they do not seek relief against Liberty.  *Id.,* ¶¶ 120-136.

Finally, in Count VII, Doe alleges a claim for "Retaliation," on grounds that limitations on her participation in an internship program in response to Doe's lawsuit were retaliatory and intended to discourage Doe from pursuing her rights under Title IX.  *Id.*, ¶¶ 137-42.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.  Legal conclusions, however, enjoy no such deference.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  As the Court pointed out in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  556 U.S. at 678.

## ARGUMENT

**I.       The Elements for Pleading a Private Cause of Action Under Title IX.**

The U.S. Supreme Court has long recognized a private right of action under Title IX, and in *Davis v. Monroe Cnty, Bd. of Educ.,* 526 U.S. 629, 643-650 (1999), the Court extended that right of action to claims arising out of student-on-student harassment in an educational setting.  To establish such a claim, a plaintiff must plead – and ultimately prove – that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures….has actual knowledge of discrimination and fails to adequately respond."  *Facchetti v. Bridgewater College,* 175 F. Supp. 3d 627, 636-37 (2016) (*citing Davis,* 526 U.S. at 290*; Gebser*

6

*v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290-92 (1998)).  It is not enough for the plaintiff to show that the institution was negligent in responding to a report of sexual harassment; rather, the plaintiff must plead facts to show that the institution's response  was "so inadequate as to constitute 'deliberate indifference.'"  *Id.*  A school is deliberately indifferent when its response to the report of sexual harassment is "clearly unreasonable in light of the known circumstances."  *Id., citing Davis,* 526 U.S. at 648.

## II.    Count I of the Complaint Does Not State a Legally Cognizable Title IX Claim.

Plaintiff's first cause of action is styled as a Title IX claim for "Pre-Assault Deliberate Indifference/Hostile Environment."  (Compl. ¶¶ 106-109).  Doe alleges that Liberty knew **before** she was assaulted in October of 2020 that other sexual assaults had occurred, and that Liberty's insufficient response to sexual assaults enabled additional assaults to occur.  *Id.*  Such claims are not permitted within the Fourth Circuit.

This very issue was addressed by this District in *Facchetti.*  The plaintiff alleged that "the rampant, prior sexual assaults occurring on its campus of which Bridgewater was fully aware made plaintiff more vulnerable to being sexually assaulted by [her alleged assailant]."  175 F. Supp. 3d at 639.  The Court rejected this theory, noting that the Fourth Circuit requires that the defendant institution "have actual notice of harassment **against the plaintiff**."  *Id., citing Baynard v. Malone,* 268 F.3d 228, 237-38 (4th Cir. 2001) (emphasis added).[4]  Thus, the fact that various other assaults

---

[4] As noted by the Court in *Facchetti*, other District Courts within the Fourth Circuit have followed the binding precedent of *Baynard* in rejecting claims based upon "pre-assault" deliberate indifference.  175 F. Supp. 3d at 639-40 (*citing Rasnick v. Dickensen Cty. Sch. Bd.,* 333 F.Supp.2d 560, 566 (W.D. Va. 2004)*; Ray v. Bowers,* 767 F.Supp.2d 575, 581 (D. S.C. 2009); *see also*, *Doe v. Lenoir-Rhyne Univ.,* No. 5:18-CV-00032-DSC, 2018 WL 4101520, at *2 (W.D.N.C. Aug. 28, 2018)).

had occurred on Bridgewater's campus in the preceding year was "too tenuous to satisfy the 'actual notice' requirement under [*Baynard*]."  175 F. Supp. 3d at 640-41.

In *Baynard,* the Fourth Circuit examined the U.S. Supreme Court's precedent in *Gebser* and *Davis* and held that an institution must have actual knowledge of an act of harassment before it can be liable for failing to respond to such harassment.  268 F.3d at 237-38 ("*Gebser* is quite clear, however, that Title IX liability may be imposed only upon a showing that school district officials possessed actual knowledge of the discriminatory conduct in question.").[5]  Within the Fourth Circuit, therefore, a college may only be liable to a private plaintiff under Title IX where the college has notice of a specific act or course of harassment against the plaintiff and is deliberately indifferent in responding to that specific harassment.

In a more recent decision, *Doe v. Fairfax Cty. Sch. Bd.,* 1 F.4th 257 (2021), the Fourth Circuit affirmed the "actual notice" requirement of *Baynard.*  The question in that case was what type of report was sufficient to constitute "actual notice" to an appropriate school official.  In deciding that question, the Fourth Circuit reiterated that a school does not have an obligation to respond to harassment under Title IX unless and until it has "actual notice" of that specific harassment. 1 F. 4th at 265.  Quoting *Davis,* the Fourth Circuit noted that a Title IX plaintiff must show that the institution's "response to *reports of [the harasser's] misconduct* was clearly unreasonable."  *Id.,* at 266.

These rulings make sense from a policy perspective.  Title IX does not impose liability on a college whenever an event of sexual harassment occurs on its campus.  Rather, it imposes on

---

[5] The Department of Education tracked this requirement when it promulgated new regulations for the enforcement of Title IX in 2020.  34 C.F.R. §106.44(a).  Those regulations require that "[a] recipient [university] with actual knowledge of sexual harassment in an education program or activity of the recipient against a person in the United States must respond promptly in a manner that is not deliberately indifferent." *Id.*

colleges a duty to respond to such incidents when they do occur. Absent the "actual notice" requirement, colleges and universities effectively would be vicariously liable for any sexual assault occurring on their campuses, and the proverbial floodgates would open for claims against colleges and universities based upon conduct they could not reasonably foresee or prevent.

Plaintiff's claim for "pre-assault" deliberate indifference runs directly counter to this controlling law. To prevail on her claims under Title IX, Jane Doe must prove that Liberty was deliberately indifferent in its response to reports of her alleged sexual assault on October 30, 2020. Liberty's historical response to reports of other assaults involving other students is irrelevant to Plaintiff's claims and cannot be the basis for liability. Just as the plaintiff's allegations regarding other recent assaults at Bridgewater could not sustain a claim for deliberate indifference in *Facchetti*, Jane Doe's conclusory allegations regarding other unspecified assaults at Liberty do not support a cause of action here.

It is worth noting that Plaintiff does not allege Liberty had any notice or reason to foresee that she might be assaulted on October 30, 2020. Plaintiff does not allege that she (or any other student) had previously reported harassment by her alleged assailant, nor are any facts alleged to suggest that Liberty somehow could have intervened and/or prevented the assault from taking place. In fact, Doe's claim that she was assaulted at her assailant's off-campus apartment makes her legal claims even more untenable, as a student's off-campus residence is not under Liberty's control or authority. Thus, even if pre-assault claims were cognizable in the Fourth Circuit, Plaintiff has not pled facts to show that Liberty's response to prior assaults occurring on its campus contributed to, much less caused, her off-campus assault.

### III.      Count III of the Complaint Fails to State a Claim.

Plaintiff's third cause of action is styled as a "hostile environment" claim under Title IX, and it is premised only upon conclusory allegations that Liberty created a discriminatory atmosphere on campus that was sufficiently "severe or pervasive" to constitute a "sexually hostile environment."  (Compl. ¶ 115.)[6]

The same elements required to plead a claim of deliberate indifference under Title IX are also required to plead a claim of hostile environment.  Specifically, a student must show that she was subjected to harassment on the basis of sex that was sufficiently severe, pervasive and objectively offensive to create a hostile environment in an educational program or activity, and that there is a basis for imputing liability to the institution.  *Jennings v. Univ. of North Carolina,* 482 F.3d 686, 695 (4th Cir. 2007); 34 C.F.R. § 106.30(a).  A hostile environment is one in which the harassment of a plaintiff is so significant as to "deprive [her] of access to…educational opportunities or benefits." *Id.,* (*citing Davis,* 526 U.S. at 650.)  To impute liability to an institution, one must show that "'an official who…has authority to address the alleged discrimination and to institute corrective measures…has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond' or displays 'deliberate indifference' to discrimination." *Id.* at 700 (*citing Gebser,* 524 U.S. at 290).

At the outset, it is unclear how Count III of the Complaint differs in any material way from Count I.  Both counts are denominated as claims for "hostile environment," and both appear to rely only upon Liberty's response to incidents of sexual harassment **prior to** Doe's alleged assault as creating a hostile or discriminatory "atmosphere" on Liberty's campus.  (Compl. ¶ 115.)  Thus,

---

[6] Plaintiff's allegations do not comport with the definition of "sexual harassment" in the Department of Education's regulations governing Title IX.  To constitute "sexual harassment" under 34 C.F.R. §106.30(a), conduct must be so *severe, pervasive, and objectively* offensive that it effectively denies a person equal access to the recipient's education program or activity."

the arguments set forth above as to Count I apply with equal force as to Count III.  The Fourth Circuit does not recognize "pre-assault" claims under Title IX, and an institution can only be liable for failing to respond to an event or course of harassment of which it has "actual notice."  *See, Facchetti,* 175 F. Supp. 3d at 639 (*citing Baynard,* 268 F.3d at 237-38).  In sum, Liberty cannot be liable to Jane Doe for its alleged response to other assaults involving other students.

Moreover, Doe's Complaint does not explain how Liberty's alleged "weaponization" of its policies precluded her from participating in an educational program or activity at Liberty.  There is no indication in the Complaint that Plaintiff was harassed or suffered from any form of sex-based discrimination prior to her alleged assault on October 30, 2020, let alone an allegation that Liberty had actual knowledge of such harassment.  Thus, Doe has not alleged facts to show that any conduct by Liberty **prior to** her alleged assault actually "deprived [her] of access to educational opportunities or benefits."  *Jennings,* 482 F.3d at 699.

For each of these reasons, the Court should dismiss Count III of Doe's Complaint with prejudice.

### IV.    Doe Cannot Pursue A Claim for Negligence.

In Count IV of the Complaint, Doe again focuses on Liberty's response to reports of harassment involving other students **prior to** Doe's alleged assault on October 30, 2020.  She avers that Liberty's response to previous assaults "made the Plaintiff's injuries more likely to occur and harder to prosecute because of the dangerous environment it created for students." (Compl. ¶ 117.)

Once again, this District's holding in *Facchetti v. Bridgewater* is instructive.  The plaintiff in that case also advanced a negligence claim against the college on the grounds that the college knew student-on-student sexual assaults had occurred previously in its dorm rooms and failed to warn plaintiff or intervene to prevent her from being assaulted.  175 F.Supp.3d at 641-44.  In

11

dismissing that claim, the Court first noted that the college did not have a legal duty to protect the

plaintiff from an assault by another student.  Specifically, the Court opined:

> Virginia strictly limits the circumstances in which a defendant has a
> duty to warn or protect another from the criminal acts of a third
> party. The general rule is that "a person does not have a duty to
> protect another from the conduct of third persons." *Burns v.*
> *Gagnon*, 283 Va. 657, 727 S.E.2d 634, 641 (2012) (citations
> omitted). The rule applies with particular force "when the third
> person commits acts of assaultive criminal behavior because such
> acts cannot reasonably be foreseen." *Id.* (*quoting Burdette v. Marks*,
> 244 Va. 309, 421 S.E.2d 419, 420 (1992)). There are exceptions to
> this rule, though, including where "a special relation exists ...
> between the defendant and the plaintiff which gives a right to
> protection to the plaintiff." *Burns*, 727 S.E.2d at 641–42 (*quoting*
> *Burdette*, 421 S.E.2d at 420).

175 F.Supp.3d at 641.

The Court expressed doubt "whether Virginia would impose, as a matter of law, a

heightened duty on a college to warn or protect its students from a third-party's tortious acts on

campus." *Id.*, at 643.  Even if such a relationship were established, however, plaintiffs must plead

facts to show that the risk of harm was, at the very least, "known or reasonably foreseeable."  *Id.,*

*citing Commonwealth v. Peterson*, 286 Va. 349, 749 S.E.2d 307, 312 (2013); *see also, Schieszler*

*v. Ferrum College,* 236 F.Supp.2d 602, 609 (W.D.Va. 2002) ("[T]he existence of a special

relationship will not, standing alone, give rise to a duty; the harm must be foreseeable.").  This is

in keeping with recent precedent from the Supreme Court of Virginia, which affirms that an

educational official or institution may only be found to have a legal duty to protect students from

criminal acts of others if the institution is aware that such criminal acts are about to occur.  *See,*

*e.g., Peterson*, 286 Va. 349, 749 S.E.2d 307 (finding no duty to warn or protect students existed in

relation to the mass shooting at Virginia Tech, despite university officials' knowledge of a

shooting on campus earlier that morning); *Burns v. Gagnon*, 283 Va. 657, 669-70, 727 S.E.2d 634,

642-43 (2012) (declining to find special relationship or legal duty owed by high school principal even where threat of assault on student was reported to principal earlier that day).

A logical principle emerges from these cases.  A university will only have a legal duty to protect students from criminal acts of others (such as sexual assault) in situations where the institution knew of, or could reasonably foresee, a specific, individualized harm or risk.  General awareness that sexual assaults might occur are not sufficient to impose a legal duty and concomitant liability upon a university or other educational institution.  *See, e.g., Facchetti,* 175 F.Supp.3d at 644 ("while it might be generally foreseeable – as well as unfortunate and troubling – that sexual assaults occur on college campuses, including Bridgewater's, that general risk does not translate into a 'reasonably foreseeable' risk that [Defendant] would assault [Plaintiff].")

The Court in *Facchetti* also noted that the plaintiff could not establish the element of causation.  Having alleged that she invited her assailant to stay in her room, and absent any allegation that her assailant had previously committed any sexual assault or misconduct, the plaintiff could not identify any "steps the college could have taken to protect [her] from attack." 175 F.Supp.3d at 644.

Here, Plaintiff does not allege any facts to suggest that Liberty could have foreseen that she would be assaulted on October 30, 2020 when Doe visited her alleged assailant at his off-campus apartment.  (Compl. ¶¶ 16, 18.)   There are no allegations, for example, that her assailant had a history of sexual misconduct or was likely to perpetrate any assault.  Thus, Doe has not alleged facts sufficient to establish that Liberty owed – much less violated – a common law duty to protect Doe from another student's allegedly assaultive behavior.

Nor does the Complaint allege facts to show that Liberty's purported negligence **caused** the Plaintiff's injuries.  If Bridgewater could not have protected its student from a sexual assault

occurring in one of its on-campus dorms, it follows that Liberty had no way to prevent an assault from occurring in an off-campus apartment.

Thus, the Complaint fails to identify a legal duty that Liberty owed to the Plaintiff, and it does not allege facts to show that Liberty somehow caused – or reasonably could have prevented – Plaintiff's assault.  The Court should dismiss Plaintiff's claim for negligence in Count IV of the Complaint.[7]

## **CONCLUSION**

Based on the foregoing, Liberty respectfully requests that the Court dismiss Counts I, III, and IV of the Complaint with prejudice.

LIBERTY UNIVERSITY, INC.,

By:  /s/ Harold E. Johnson
Harold E. Johnson, Esquire (VSB #65591)
Amanda H. Bird-Johnson, Esquire (VSB #92110)
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, VA  23218
Telephone: (804) 420-6000
Facsimile: (804) 420-6507
hjohnson@williamsmullen.com
abird-johnson@williamsmullen.com
*Counsel for Defendant Liberty University, Inc.*

---

[7] Notably, Count IV includes a request for "fees and costs pursuant to the fee-shifting provisions of Title IX."  (Compl. ¶¶ 116-119).  To the extent Plaintiff intends for Count IV to assert a claim under Title IX – and not under common law – she still has not stated a viable claim because "mere negligence is insufficient" to support a private right of action under Title IX.  *Facchetti,* 175 F.Supp.3d at 636-37 (*citing Gebser,* 524 U.S. at 290.)  Rather, a Title IX plaintiff must show that the institution's response was "deliberately indifferent."  *Id.*

## CERTIFICATE OF SERVICE

I hereby certify that on 14th day of January 2022, I electronically filed the foregoing Answer

with the Clerk of the Court using the CM/ECF system, which will send notice to the following:

Kevin Edward Byrnes
Fluet Huber Hoang
1751 Pinnacle Drive, Ste 1000
Tysons, VA 22102
703-590-1234
Email: kbyrnes@fhhfirm.com
*Counsel for Plaintiff*

John Ernest Falcone
Luke Joseph Malloy , III.
Petty, Livingston, Dawson & Richards
725 Church Street, Suite 1200
Lynchburg, VA 24505
434-846-2768
Fax: 847-0141
Email: jfalcone@pldrlaw.com
lmalloy@pldrlaw.com
*Counsel for Defendant Charles Tippett*

By:   /s/ Harold E. Johnson
Harold E. Johnson, Esquire (VSB #65591)
Amanda H. Bird-Johnson, Esquire (VSB #92110)
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, VA  23218
Telephone: (804) 420-6000
Facsimile: (804) 420-6507
hjohnson@williamsmullen.com
abird-johnson@williamsmullen.com
*Counsel for Defendant Liberty University, Inc.*