**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| JANE DOE, *Plaintiff*, v. LIBERTY UNIVERSITY, INC., and CHARLES TIPPETT *Defendants*. | Case No.: 6:21-cv-00059-NKM-RSB<br><br>Date: January 28, 2022 |

**PLAINTIFF JANE DOE'S MEMORANDUM IN OPPOSITION TO
DEFENDANT LIBERTY UNIVERSITY, INC.'S MOTION TO DISMISS**

COMES NOW, the Plaintiff, Jane Doe ("Plaintiff"), by and through counsel, and pursuant to Local Civil Rule 11(c)(1), and respectfully submits her opposition to Defendant Liberty University, Inc.'s ("Defendant," "LU" or the "University") Motion to Dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6), filed on or about January 14, 2022 (ECF No. 15), and in response such Motion to Dismiss and Brief in Support thereof (ECF No. 16) (collectively, the "Motion"), states as follows:

**I.  BACKGROUND**

The Complaint alleges the Plaintiff was drugged and raped by a fellow Liberty University student, in October 2020. (ECF No. 1 at 1). Following the rape, Plaintiff promptly reported the assault to the University's Title IX office (the "Title IX office"). Rather than appropriately advise her of her procedural and substantive rights, the University provided incoherent guidance on how to address the rape or pursue her rights. (ECF No. 1 at 6-7). As a result of this interaction, Plaintiff was consciously, or negligently, discouraged from pursuing her rights and protecting her interests. (ECF No. 1 at 7). Intentionally or not, the inaction on the part of the University's Title IX office meant that Plaintiff was repeatedly forced to encounter her assailant on campus. Plaintiff's assailant was never adequately investigated or punished by the University. Instead, the Plaintiff

1

was simply forced to face the severe or pervasive hostile educational environment in which a rapist, who used a drug to remove her ability to give clear and positive consent, was left unscathed and her rights were ignored. (ECF. No. 1 at 16-18). Plaintiff has sufficiently alleged that the conduct of the Title IX office was clearly unreasonable under the circumstances and constitutes deliberate indifference, that she experienced a hostile educational environment, and that Defendant's assumption of a duty to investigate and take action was later negligently performed, causing the Plaintiff harm.

## II. APPLICABLE LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. "To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing *5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure* § 1356 (1990)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Cook v. Howard*, 484 F. App'x 805, 810 (4th Cir. 2012). It is well established that, "[I]n passing on a motion to dismiss, . . . the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The Supreme Court has held that sexual harassment, including coerced sexual intercourse, is, by its nature, a form of sex-based discrimination. *See Franklin v. Gwinnett Cty. Pub. Schs.*, 503

U.S. 60, 63, 74-75, (1992) (finding that a teacher's repeated rape of a student on school property supported a Title IX claim, noting that sexual harassment is based on the victim's sex and thus constitutes sex-based discrimination); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, (1986). Here, Plaintiff has alleged violent conduct that is among the most severe possible which can occur to any Plaintiff, and therefore constitutes sexual discrimination, and a hostile environment under these circumstances.

As it pertains to Count I, the Fourth Circuit has held that, to establish a Title IX claim based on student-on-student sexual harassment, a plaintiff must show that, (1) they were a student at an educational institution receiving federal funds; (2) they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school; (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment. *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 263–64 (4th Cir. 2021). The Fourth Circuit has also emphasized that it is not true "that only a complete failure to act can constitute deliberate indifference, or that any half-hearted investigation or remedial action will suffice to shield a school from liability." *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016).

The Fourth Circuit has recently held that a victim of sexual harassment may be deprived of access to educational opportunities or benefits, in violation of Title IX, in at least three different ways: if harassment (1) results in the victim's physical exclusion from educational program or activity; (2) so undermines and detracts from the victim's educational experience as to effectively deny her equal access to institution's resources and opportunities; or (3) has concrete, negative

3

effect on the victim's ability to participate in educational program or activity. *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257 (4th Cir. 2021). Although a single, isolated incident generally does not provide basis for Title IX liability, such incident may be sufficient if it is extremely serious. *Id*. Thus, a school may be held liable under Title IX based on a single, pre-notice incident of severe sexual harassment, where the school's deliberate indifference to that incident made the plaintiff more vulnerable to future harassment, or otherwise had a combined systemic effect of denying equal access to scholastic program or activity. *Id*. Here, Plaintiff has alleged sufficiently severe conduct to adequately state a claim under applicable Fourth Circuit case law.

### III. <u>PERTINENT ALLEGATIONS</u>

The Complaint alleges that the Plaintiff was drugged and raped. (ECF. No. 1, at 4-5, 15). After that traumatic event, she feared for her safety and altered her daily activities, both on and off campus, to avoid additional contact with her assailant. (*Id*. at 18). Plaintiff's fear led her to shun the benefits of university life and her own opportunity for in-person coursework. (*Id*.) The University is uniquely Christian oriented in its teaching philosophy. (*Id*. at 12-13, ECF No. 1-1 at 6). It obligates its students to avoid pre-marital sex and to adhere to standards of conduct the University claims represents that Christian philosophy. (*Id*., *see also* ECF No. 1-1). The failure of the University to properly address Plaintiff's allegations reinforced her sense of shame and isolation resulting from an act of violence against her. (ECF. No. 1 at 14-18). While the University allowed the assailant to graduate unscathed, Plaintiff was left involuntarily impregnated, suffered a miscarriage and was left to fend for herself as the University callously, deliberately or intentionally avoided its responsibilities to follow Title IX's and its own policies, perhaps to hide the existence or prevalence of sexual assault against its students. *Id*., (ECF No. 1 at 16-19); *See also* (ECF No. 1-1).

As a result, Plaintiff felt excluded from the full university experience, was denied full access to her classes and school activities, and she was left to feel responsible for the violation of her own bodily autonomy. (ECF. No. 1 at 10, 18-20). These conditions created a lack of equal access to Liberty University's resources. Further, *Plaintiff alleged she was expressly threatened, with loss of University-based employment, if she pursued remedies against the University.* (ECF No. 1 at ¶¶ 45-46). There can be little doubt that such threats, which arose in response to the *theoretical* assertion of the Plaintiff's rights, were University-directed and linked to Plaintiff's employment in an internship affiliated with the University. (*Id*. at 8). As a result of being ignored, frightened and traumatized, Plaintiff was forced to avoid the campus and classroom, and conduct her studies online. (*Id*. at 18). The retaliatory atmosphere created by the threats to her full participation in this internship only exacerbated the hostile educational environment she was already encountering.

IV. **ARGUMENT**

    a. **Count I Adequately States a Legally Cognizable Title IX Claim as Defendant's Policies and Stated Responses to Sexual Assault were Deliberately Indifferent.**

The Complaint alleges that Liberty University's policies were inconsistent and contrary to Title IX before the rape occurred, and this lack of adherence to federal law emboldened perpetrators to commit assaults with impunity, while discouraging victims from stepping forward. Indeed, Liberty University's policies left open the possibility of requiring victims of sexual assault to face "accountability measures" for their sexual relations, regardless of whether such relations were imposed upon the victim by force or without consent. (ECF No. 1 at 13). The University prohibited *any sexual relations* which occurred, "outside of a biblically ordained marriage…" (*Id*.). Such policies create a heavy lever to deploy against students, largely 18-21 years of age, who might seek to report a date rape, such as the one that occurred here. In addition, as the Complaint

5

details, the actual policies were rather opaque and were explained to Plaintiff in an inherently incoherent and contradictory manner as what Plaintiff was told differed significantly from what she received in writing, and she felt pressured and discouraged throughout the process. (*Id*. at 6-7, 14-18). Plaintiff was warned *that reporting sexual assault could allow the school to punish her for the sex-based conduct*. (*Id*. at 13-15).

While the "Liberty Way", and the "Liberty University Discrimination, Harassment, and Sexual misconduct Policy" (ECF No. 1-1) claimed to set up a framework for addressing sexual assault, such framework was deficient and inconsistent with the requirements of Title IX and displayed a deliberate indifference to ongoing deficiencies in the process and policies set in place. By allowing the University to saddle victims with unspecified "accountability measures" the University consistently maintained policies and processes that were inadequate and discouraged reports. Under these circumstances, and in light of an ongoing retaliation lawsuit from a senior LU employee which alleges multiple aspects of the LU's policies were deficient and the University was aware of its inadequate response to instances of sexual assault, Plaintiff has identified specific, systemic, and pernicious deficiencies in the University's policies and actions. (ECF No. 1 at 11-12). These policies made assaults more likely to occur, discouraged reports, and were implemented in a way that was inconsistent with federal law. These allegations are the gravamen of the pre-assault deliberate indifference claim and, viewed granting all inferences in favor of the Plaintiff, plausibly state a claim for relief.

### b. Count III Adequately Pleads Plaintiff's Hostile Environment Claim.

A Title IX Plaintiff successfully alleges a hostile environment claim at the pleadings stage if the allegations in the complaint, viewed in the light most favorable to her, can be said to deprive her of access to educational opportunities and benefits. *Davis v. Monroe Cty. Bd. of Educ.*, 526

U.S. 629, 650 (1999). In this case, the Plaintiff alleged that she felt excluded from the classroom, threatened with termination from her internship for pursuing her Title IX rights, and ultimately did, in fact, experience interference with her position at such internship following the threat. (ECF No. 1 at 17, 21-23). In light of the fact that these actions all followed a rape, under a totality of the circumstances, the allegations are sufficient to plead a claim for hostile educational environment.

Similar to the context of Title VII hostile work environment claims, when considering a Title IX hostile environment claim, courts determine whether a reasonable person would—and whether a given plaintiff did—find the environment to be hostile or abusive under the totality of the circumstances. *See Faragher v. Boca Raton*, 524 U.S. 775, 777 (1998); *see also Sutton-Reed v. Va. Dep't of Alcohol Beverage Control*, No. 3:15cv764-HEH, 2016 WL 1276428, at *6 (E.D. Va. Mar. 30, 2016). The factors often weighed include [1] "the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." (Emphasis added) *EEOC v. Sunbelt Rentals, Inc*., 521 F.3d at 315 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (internal quotation marks omitted)). The Fourth Circuit has sometimes added a fifth factor in Title VII cases, (5) "…whether it resulted in psychological harm" *Trusty v. Maryland*, 28 F. App'x 327 (4th Cir. 2002). However, "[N]o single factor is" required or dispositive, as the real social impact of the "behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Harris*, 510 U.S. at 23. Rather than analyze the workplace, these factors can be applied to the educational setting.

Rape is a serious matter, involving a non-consensual violation of the victim's bodily integrity that deprives that person of agency and control. The harm from rape is self-evident and

the diversion or suppression of such a complaint is a core violation of law, particularly where school policies on such matters discourage and potentially penalize the victim for coming forward. If the victim then avoids the classroom and the campus out of fear of retribution or re-traumatization, that should establish a hostile educational environment. Under these circumstances, the allegations in the Complaint sufficiently establish existence of a hostile educational environment through Plaintiff's exclusion from the classroom and campus, the direct threats to revoke employment based on pursuit of her rights and the failure to investigate her claims or take action against her assailant.

### c. Count IV States a Legally Cognizable Claim for Negligence.

Virginia case law regarding the circumstances which impose a duty of care upon a University for its students is somewhat unsettled, but there are certain circumstances under which a school can undertake steps that create a relationship whereby a duty is imposed or assumed. *See Facchetti v. Bridgewater College*, 175 F. Supp. 3d 627 (W.D. Va. 2016) (finding no special relationship, and no duty); *Cf. Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602, 608 (W.D. Va. 2002) ("The Virginia Supreme Court has not yet addressed the issue of whether a special relationship may arise between a university or college and a student," and though it might not exist automatically as a matter of law, it could exist on the particular facts alleged.).

While a college may have no automatic legal duty to protect students from being assaulted by other students, a duty can arise in certain situations, such as "when it has encouraged its students to participate in an activity and has taken affirmative steps to supervise and control the activity." *Doe v. Union Coll.*, No. 119-CV-284-GLS-CFH, 2020 WL 1063063, at *7 (N.D.N.Y. Mar. 5, 2020) *quoting Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 361 (N.D.N.Y. 2014) (internal quotation marks and citations omitted). There are circumstances for which a claim for negligence can be

brought against a University that failed to adequately assist a student, "The conclusion that the relationship between a college or university and its students can give rise to a duty to protect students from harms of which the school has knowledge is consistent with the Virginia Supreme Court's analysis in other contexts." *Schieszler* at 608-9. In light of these circumstances, as alleged in the Complaint, it cannot be said that, as a matter of law, the Defendant owed no duty whatsoever to the Plaintiff in this case.

Here, Plaintiff has alleged sufficient facts (ECF No. 1-1) to infer there was a duty owed to her on the part of the University. Once Plaintiff reported her sexual assault to the Title IX office, policy dictated, and a school official implied, there would be prompt action taken. (ECF. No. 1 at 16). In other words, the reporting of the rape to school officials, to an office designed to receive and address such reports, creates a distinct duty. The University may not be obligated to protect students generally form all harm, but as a federal statute mandates a policy for reporting and addressing a specific type of harm, and the University ignored that obligation, negligence is actionable. Defendants owed Plaintiff a special duty, to address allegations of sexual assault brought against another student, who has, by virtue of being a fellow student, submitted themselves to such scrutiny, and breached that duty through the mishandling of her allegations and deliberate indifference to their policies' deficiencies leading to increased risk of students falling victim to sexual assaults. *See Doe v. Sarah Lawrence College* (No 19-CV-10028-PMH, 2020 WL 1819914 at *10 (S.D.N.Y. Apr. 10, 2020) (finding that a Plaintiff stated a plausible claim for negligence when evaluating similar allegations implicating an allegedly inadequate Title IX investigation into an assault).

## V. CONCLUSION

For all of the forgoing reasons, and for those presented at a hearing, Plaintiff respectfully requests that this honorable Court deny the Defendant's Motion to Dismiss. Should the Court be

9

inclined to dismiss certain of the Counts, the Plaintiff respectfully requests that she be permitted reasonable time to amend her claims to address any perceived deficiencies.

Dated: January 28, 2022

                                                Respectfully submitted,

                                                */s/ Kevin E. Byrnes*
                                                Kevin E. Byrnes, VSB No. 47623
                                                FH+H
                                                1751 Pinnacle Drive, Suite 1000
                                                Tysons, Virginia 22102
                                                T: (703) 590-1234
                                                F: (703) 590-0366
                                                KByrnes@fhhfirm.com
                                                *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January 2022, the forgoing Plaintiff's Opposition to Defendant Liberty University, Inc.'s Motion to Dismiss was served on all counsel of record in this matter via the court's electronic filing (ECF) system.

*/s/ Kevin E. Byrnes*
Kevin E. Byrnes, Esq.
*Counsel for Plaintiff*