IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| JANE DOE,<br><br>    *Plaintiff/Counter-Defendant,*<br><br>v.<br><br>CHARLES TIPPETT<br>    *Defendant/Counter-Plaintiff,*<br><br>LIBERTY UNIVERSITY, INC., and<br>    *Defendant.* | Case No.: 6:21-cv-00059-NKM-RSB<br><br>Date:    May 19, 2022 |

**PLAINTIFF/COUNTER-DEFENDANT JANE DOE'S MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS THE COUNTERCLAIM**

COMES NOW, the Plaintiff, Jane Doe ("Plaintiff"), by and through counsel, and pursuant to Rule 12(b)(6), respectfully submits her Motion to Dismiss the Defendant Charles Tippett's ("Counterclaimant" or "Tippett") Counterclaim for Defamation ("Counterclaim"). In support of her motion, Plaintiff states as follows:

**I.**     **BACKGROUND**

This matter arises out of the rape of the Plaintiff by Defendant, in off-campus housing while she was attending Liberty University. Plaintiff's initial Complaint ("Complaint"), details Plaintiff's assertion of the facts of the rape and her claim that she reported the matter, to Liberty University's ("LU") Title IX office (the "Title IX Office") in early November 2020. In later communications to the Title IX Office, during April of 2021, Jane Doe ("Ms. Doe"), affirmed her initial report she believed she was raped, and that the Counterclaimant was her assailant.

As is her right, Ms. Doe filed a comprehensive complaint in November 2021, detailing the rape, her reporting of the rape, her attempts to seek treatment for it and her reporting of the rape to Liberty, where she and her assailant were both students at the time. The complaint went into depth

about the circumstances surrounding the rape, the potential use of alcohol or other substances to facilitate the assault and the Plaintiff's lack of consent to the penetration.[1] Except for the filing of the Complaint, and the reporting of the rape to LU, there are no allegations the Plaintiff made any statements regarding the rape to the public at large, prior to the submission of the lawsuit itself. Her "publications" of the sexual assault were consistent with the appropriate reporting of the matter and to the assertion of protected rights through a pleading that bears immunity.

The Counterclaimant, Charles Tippett, asserted no Constitutional or procedural rights when questioned by LU officials. Indeed, Tippett participated in Liberty University's Title IX investigation in 2021 and submitted a statement of his own. While made cognizant of the allegations against him, Tippett never asserted or filed a claim of defamation until after he was sued. Instead, Tippett filed a "Counterclaim" for defamation on April 14, 2022, which appears to focus solely on statements Doe made to the University, or which were made in the instant lawsuit. As a matter of law both claims are specious and repugnant to settled law, and appear to be filed to provide a response for media consumption in a cynical attempt to denigrate Ms. Doe.

Having no basis to preclude the use of his identity in the underlying pleadings, Tippett responds with a claim of "defamation" knowing full well that the statements to the University are privileged and were never "published" outside a privileged context, two issues that destroy any defamation claim and he knew, or should have clearly known, that any claim based on statements made in the course of the lawsuit itself cannot be the basis for any defamation claim. Interestingly,

---

[1] The Defendant filed a prior motion that is now pending before the Court that objected to the use of the Jane Doe designation. Defendant claimed, without legal support that the Defendant's name also should have been identified as a pseudonym. Aside from the obvious fact that a rapist and their victim are not similarly situated, we note that to date the Defendant has not filed a motion to seal the proceeding or to proceed under a pseudonym. Thus, the Defendant is identified by their name.

2

Tippett's Counterclaim triggered press reports, which was what it was likely designed to do. Plaintiff and her counsel carefully avoided commenting on the filing of the Counterclaim itself.

The Counterclaim itself contains an implied threat: Dkt. No. 30 at ¶2. Specifically, the Counterclaim states, "Doe is the plaintiff in the aforesaid Complaint. Although she is proceeding in the Complaint under the pseudonym "Jane Doe," her true identity is known to all parties." Such a statement is meant to signal something other than its factual assertion. Of course, Doe's identity is known to the University and Tippett, she lodged a complaint with the University, which Tippett responded to. The statement is added, we suspect to alert the media to dig into the identity of the victim or to spur some leak in that respect.

In his arguments to the Court, Tippett professed shock that the victim identified him at all and claimed, he had suffered harm, including loss of employment, as a result of the lawsuit. But, if Plaintiff is accurate in her claims, she was raped. Such behavior can trigger a lawsuit, that can have consequences. Tippett does not and cannot allege that Doe contacted his current employer or that Doe suggested any punishment other than obtaining damages from Tippett, and from Liberty for perceived malfeasance. Nothing in Doe's actions authorizes Tippett to sue for defamation in any instance, and the consequences to Tippett, even if the lawsuit triggered them, are not legally cognizable harms.[2]

## II.  APPLICABLE LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.[3] "To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its

---

[2] Tippett's Counterclaim also undermines his earlier Motion to Dismiss (Dkt. No. 10). In essence he has submitted to the jurisdiction of the Court to adjudicate the Complaint on the merits, by filing a Counterclaim. His Motion to Dismiss and Brief in Support are directly contradicted by the Counterclaim's assertion of jurisdiction over Ms. Doe and therefore must be denied. (Dkt. Nos. 10, 11).

[3] For this pleading "Rule" or "Rules" refers to the Federal Rules of Civil Procedure.

face.'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Cook v. Howard*, 484 F. App'x 805, 810 (4th Cir. 2012). While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,' " or "a formulaic recitation of the elements of a cause of action will not do." *Id*. (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-CV-00042, 2021 WL 3856459, at *1 (W.D. Va. Aug. 30, 2021). Even a plausible claim must be timely and based on actionable statements to afford a counter-plaintiff a valid cause of action under Virginia law and Rule 12(b)(6).

### III. THE STATEMENTS MADE BY PLAINTIFF IN HER COMPLAINT CAN NOT FORM THE BASIS OF A DEFAMATION CLAIM

A federal court exercising jurisdiction over Virginia law claims for defamation, applies Virginia law.[4] Under Virginia law, cause of action for defamation accrues on the date that the defamatory acts occurred, and has a year to timely file suit. Va. Code Ann. § 8.01-247.1. The Virginia Supreme court has held "…that when an injury is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy, the statute of limitations immediately attaches." *Westminster Investing Corp. v. Lamps Unlimited*, 237 Va. 543, 546, 379 S.E.2d 316, 317–18 (1989); *Caudill v. Wise Rambler*, 210 Va. 11, 14–15, 168 S.E.2d 257, 260 (1969). This includes defamation cases, where the date of publication of the defamatory statements

---

[4] *See for e.g., Edwards v. Schwartz*, 378 F. Supp. 3d 468, 502–03 (W.D. Va. 2019) "In defamation cases, Virginia courts apply the substantive law of the state where the defamatory statements were first published. Citing *Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir. 1992) (applying Virginia law).

is the date upon which the cause of action accrues. *See Jordan v. Shands*, 255 Va. 492, 498, 500 S.E.2d 215, 218 (1998) (where defamation claim was dismissed for failure to file within a year of accrual). Accordingly, a Plaintiff has one year to bring a timely claim for defamation in Virginia courts from the date of the defamatory statements. *Id*. A party alleging defamation must prove "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480, 737 S.E.2d 890, 892 (2013) (internal quotation marks omitted). *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015).

Under well-settled Virginia law, "words spoken or written in a judicial proceeding are absolutely privileged provided the words are relevant to the subject matter of the proceeding." *See Darnell v. Davis*, 190 Va. 701, 707, 58 S.E.2d 68 (1950).[5] If a communication occurs during a judicial proceeding, and the communication is material, relevant, or pertinent to the judicial proceeding, it carries an absolute privilege. *Id. Donohoe Constr. Co., Inc. v. Mount Vernon Associates,* 235 Va. 531, 537 (1988). Absolute privilege bars any cause of action for defamation as a matter of law. The maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false. *Spencer v. Looney*, 116 Va. 767, 774, 82 S.E. 745, 747 (1914).

Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. *Penick v. Ratcliffe,* 149 Va. 618, 628, 140 S.E. 664, 667 (1927). If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by

---

[5] The Virginia Supreme Court has explained, "Privileged communications are of two kinds, those absolutely privileged and those qualifiedly privileged. An absolute privileged communication is one for which an action will not lie, even though the words are published maliciously and with knowledge of their falsity, whereas a qualified privileged communication is one which is prima facie privileged only, and in which the privilege may be lost by proof of malice in the publication of the libel or slander." *Penick v. Ratcliffe*, 149 Va. 618, 140 S.E. 664 (Va. 1927).

the privilege. *Donohoe Construction Co. v. Mount Vernon Assocs.,* 235 Va. 531, 539, 369 S.E.2d 857, 861 (1988). In Virginia, "The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation." *Id* at 860. See also *Lindeman v. Lesnick*, 268 Va. 532, 537, 604 S.E.2d 55, 58 (2004), *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 753 (E.D. Va. 2016). In addition, absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence. Lockheed Information Management *Systems Co. v. Maximus, Inc.,* 259 Va. 92, 101, 524 S.E.2d 420, 424–25 (2000). Thus, no action for defamation may lie for any statement attributable to Doe made in the complaint.

### IV. STATEMENTS MADE IN THE TITLE IX INVESTIGATION ARE ALSO IMMUNE FROM A DEFAMATION CLAIM

To the extent Tippett is relying on statements made to Liberty University, such statements also are not the basis for any legally cognizable defamation claim. First such proceedings, if they provider requisite procedural safeguards are equivalent to judicial type proceedings. *See Fogel v. Univ. of the Arts*, No. CV 18-5137, 2019 WL 1384577, at *9–10 (E.D. Pa. Mar. 27, 2019) (dismissing defamation claim based on alleged report of misconduct to University's Title IX coordinator on the grounds of absolute privilege. To the extent there is an issue over procedural safeguards, the Eastern District of Virginia has held that even if absolute immunity may not exist due to lack of procedural safeguards, nevertheless qualified immunity applies, *Doe v. Roe*, 295 F. Supp. 3d 664, 670 (E.D. Va. 2018).

A qualified privilege applies where the defamatory statements which are related to, and shared with, someone who has a common interest or duty on the topic. In evaluating cases involving this privilege, at least one federal court applying Virginia law has stated, "'Communications between persons on a subject in which the persons have any interest or duty

6

are occasions of privilege,' and cannot form the basis of a defamation claim." *Van Vleck v. Sallyport Glob. Holdings, Inc.*, No. 1:19-CV-60, 2019 WL 2273845, at *3 (E.D. Va. May 28, 2019), *Larimore v. Blaylock*, 259 Va. 568, 572 (2000). In that case, the court explained, "Virginia's qualified privilege bars tort claims in a broad array of contexts where individuals were communicating on matters of shared interest or duty." *Van Vleck* *3 (E.D. Va. May 28, 2019). Such a common interest privilege can arise in the context of an educational environment, or during employment. *See Owen v. Liberty Univ.*, No. 6:19-CV-00007, 2020 WL 1856798, at *11 (W.D. Va. Apr. 13, 2020), *aff'd*, No. 20-1596, 2022 WL 127894 (4th Cir. Jan. 13, 2022).

Defamation claims may fail as a matter of law if the statements in question were qualifiedly privileged. *Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 853 (Va. 1993*) overruled on other grounds by Cashion v. Smith*, 749 S.E.2d 526 (Va. 2013); *see Nedrick v. Southside Reg'l Med. Ctr.*, No. 3-19-cv-202, 2020 WL 534052, at *7 (E.D. Va. Feb. 3, 2020) (dismissing plaintiff's defamation claim for failure to state a claim because the communications were qualifiedly privileged). Whether a statement is privileged is a question of law. Courts evaluating a qualified privilege have stated, "It is the function of a court, not a jury, to decide whether a communication is qualifiedly privileged." *Ellington*, 230 Va. at 153, 334 S.E.2d at 853; *Aylor v. Gibbs*, 143 Va. 644, 648, 129 S.E. 696, 697 (1925). *Smalls v. Wright*, 241 Va. 52, 54, 399 S.E.2d 805, 807 (1991). In *Cashion*, the Virginia Supreme court stated, "Once a qualified privilege has attached to a communication, the plaintiff has the burden to prove that the privilege has been lost or abused, *Preston v. Land*, 220 Va. 118, 121, 255 S.E.2d 509, 511 (1979), which must be shown by clear and convincing proof." *See Government Micro Res., Inc. v. Jackson*, 271 Va. 29, 43, 624 S.E.2d 63, 71 (2006).

7

To be actionable, defamatory statements must be factual, and not merely expression of the publisher's opinion. Such statements must be provably false. *See McBride v. City of Roanoke Redevelopment & Hous. Auth.*, 871 F.Supp. 885, 892 (W.D.Va.1994) (citations omitted). The Virginia Supreme Court has held that statements are nonactionable opinion when they are "speech which does not contain a provably false connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person." *Yeagle v. Collegiate Times*, 255 Va. 293, 295, 497 S.E.2d 136, 137 (1998). Similarly, "Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 132, 575 S.E.2d 858, 861 (2003). Furthermore, the Fourth Circuit Court of Appeals has held in a case interpreting Virginia law, that where a party "discloses the factual basis for his disagreement, allowing the reader to draw her own conclusions ... suggests ... more of an opinionated and hyperbolic screed than a defamatory" statement. *Schnare v. Ziessow*, 104 F. App'x 847, 852 (4th Cir. 2004).

The actionability of each allegedly defamatory statement is a threshold question of law for the court. Under Virginia law, both truth and substantial truth is a defense to defamation and a complete bar to recovery. *See for e.g.*, *Saleeby v. Free Press, Inc.*, 91 S.E.2d 405, 407, 197 Va. 761 (Va., 1956) "Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance, and it is sufficient to show that the imputation is 'substantially' true". Federal courts analyzing defamation claims under Virginia law apply Virginia principles requiring defamatory statements to be alleged *in haec verba*. The Eastern District of Virginia routinely applies the pleading standards of Virginia state law when they dismiss defamation cases for failure to plead exact words. *E.g., McGuire v. IBM Corp.*, No. 1:11-CV-528 LMB/TCB, 2011 WL 4007682, at *5 (E.D.Va. Sept. 8, 2011) ("The pleading standard for a defamation claim under

8

Virginia law 'requires that the exact words spoken or written must be set out in the declaration *in haec verba* ' "). *See also Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 670 (E.D. Va. 2015); *Thompson v. Town of Front Royal*, No. CIV. A. 5:98CV00083, 2000 WL 329237, at *4 (W.D. Va. Mar. 16, 2000) (finding exact words must be plead to sustain a cause of action for insulting words)[6]. To the degree the Counterclaim fails to state the precise words which were allegedly defamatory, where or when they were stated, and to whom, it fails to meet the pleading standard and should be dismissed.

To overcome a qualified privilege, and to recover punitive damages in a defamation case, the Counterclaimant must prove actual malice, by "'clear and convincing evidence that [Ms. Doe] either knew the statements [s]he made were false at the time [s]he made them, or that [s]he made them with reckless disregard for their truth.'" *Gov't Micro Res., Inc. v. Jackson*, 271 Va. 29, 624 S.E.2d 63, 70 (2006) (emphasis in original) (*quoting Ingles v. Dively*, 246 Va. 244, 435 S.E.2d 641, 646 (1993)). A plaintiff who seeks to recover punitive damages "can only prevail by establishing either circumstance by clear and convincing evidence." *Via v. Commc'ns Corp. of Am., Inc.*, 311 F. Supp. 3d 812, 824 (W.D. Va. 2018).

## V. ARGUMENT

**1. The Counterclaim relies on nonactionable statements in alleging defamation and such claims therefore fail as a matter of law.**

Many statements referenced in the Counterclaim are not actionable, even viewed in the light most favorable to the Counterclaimant. That is because they are statements of opinion,

---

[6] The Fourth Circuit has held that a cause of action for insulting words under Virginia law, "…has been interpreted by Virginia courts to be virtually co-extensive with the common law action for defamation." *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir.1987) (applying constitutional limitations on defamation actions to insulting words cases). Thus, *Goulmamine v. CVS Pharmacy*, Inc., 138 F. Supp. 3d 652, 670 (E.D. Va. 2015), *Thompson* and *McGuire* all support the conclusion that defamation claims must be stated *in haec verba* under Virginia law.

9

statements which are not defamatory, or statements which are not "of and concerning" the Counterclaimant. A careful review of the statements demonstrates why, as a matter of law, those statements cannot support a claim for defamation.

The statements which provide the gravamen of the Counterclaim are contained in paragraph ¶6, but even that paragraph does not quote Ms. Doe directly for each statement. In addition, quotes from Ms. Doe that do appear in ¶6, are bulleted and not numbered. This pleading will assign letters for clarity to ¶6(a) through ¶6(i) correspond to the bulleted list in Counterclaim ¶6. Reviewed *in seriatim*, ¶6(a) refers to an earlier statement Ms. Doe made to LU Title IX officials but does not contain any information which can provide a basis for a defamation claim as the context and subject matter of the retraction referred to in the statement is noticeably absent.[7] Regardless, this statement does not clearly contain a defamatory statement that references the Counterclaimant and thus, fails to meet the pleading standard. Paragraphs 6(b), (c), and (d) are problematic for related reasons. Those statements are not actionable because they are not the kind of statements which can support a claim for defamation as the statements concern, respectively, ¶6(b) being best friends with the counterclaimant (an unverifiable opinion, not a factually provable statement, even if it were factual, it is not defamatory); ¶6(c) that Ms. Doe was lonely or had decided to drink alcoholic beverages with the Counterclaimant at his apartment (which are not defamatory statements about him) or ¶6(d) that there was an "…expectation of drinking alcohol and either taking an Uber home or spending the night at his apartment" (which is not a statement clearly "of and concerning" the Counterclaimant, and is not defamatory in any event.[8]

---

[7] Although the Counterclaimant's counsel is well-aware of the full context of the statement about retraction referred to in ¶6a and knows that it primarily concerns the consumption of alcohol, and not the allegation of sexual assault. The Counterclaim intentionally removed the context of this statement and relies on innuendo and implication. Furthermore, because the statement referenced is bereft of context, it does not meet the pleading standard as that statement is not "of and concerning" the Counterclaimant.

[8] Counterclaimant's counsel is aware that the statement referred to suggesting Ms. Doe spend the night or use Uber to return to her apartment was a suggestion and expectation stated by the Counterclaimant to Ms. Doe, not the reverse.

Similarly, ¶6(e) the Counterclaimant stated to Ms. Doe concerning her apparent level of intoxication, "Wow you're so drunk," and she later acknowledged their mutual location to the Counterclaimant's bedroom. ¶6(f). Though the Counterclaimant states they engaged in sexual intercourse, Ms. Doe clearly disagrees it was consensual. She stated of her mental capacity, "I don't believe I was able to consent, that's why I believe it was rape." ¶6(h) and stated she had memory problems about the sequence of events due to her level of intoxication, "I don't know if I ever consented." ¶6(i). These statements, that occurred during a Title IX formal complaint investigation, were made to a LU Title IX official, in the LU Title IX office. They were not publicly shared with the media, and the Counterclaimant is only aware of the specific words used because of discovery he received as part of this case.

The LU Title IX office had a shared interest or duty in investigation of Ms. Doe's allegations involving the counterclaimant. Indeed, LU was required by federal law to take certain actions following the reports it received.[9] Thus, the LU Title IX office had a corresponding interest or duty in the subject matter of Ms. Doe's statements sufficient to trigger the privilege. Under these circumstances, the statements Ms. Doe made in November 2020, and repeated in April 2021, were at least qualifiedly privileged, and there are no allegations she made any statements outside of this qualifiedly privileged setting, nor that she abused the privilege sufficient to lose its protection. The fact that the Counterclaimant tries to selectively quote from a document generated during a Title IX investigation, received in this case that is subject to a protective order and was marked as "CONFIDENTIAL" does not vitiate the privilege. The fact remains that the only person publishing these partial, and selective quotes from the Title IX investigation is the Counterclaimant, not Ms. Doe.

---

[9] See Title IX of the Education Amendments of 1972 (Title IX) 20 U.S.C. §1681 *et seq.*, and the implementing regulations, 34 C.F.R. part 106. See also Va. Code §23.1-806 requiring reports of acts of sexual violence.

The Counterclaimant attempts to circumvent the pleading standard by claiming, "Subsequent to her complaint and statement to LU on April 16 and 17, 2021, Doe reaffirmed her rape allegation to other persons, including LU officials, on multiple occasions." Dkt. No. 30 ¶7. But this allegation lacks specific information called for under Rule 8(a) and Virginia law. Left unstated are to whom Ms. Doe made the statements, what the statements were, and when and where they occurred. Because these statements were to LU officials, there is a significant likelihood they were at least qualifiedly privileged. For example, Ms. Doe was an LU intern at a university affiliated group. If the statements referred to in the Counterclaim ¶7 arose during her employment relationship, or were directed toward LU Professors, or Title IX officials, they were likely privileged. For these reasons, the Counterclaimant fails to state a claim for defamation as the statements he relied on were all privileged, and he did not plead facts which would support a conclusion to the contrary. Counterclaimant's defamation claim is unsupported and conclusory as he fails to adequately identify actionable statements, or even those that are actually false.

This court has dismissed claims for defamation in similar circumstances where the allegedly defamatory statements were made in a setting of qualified privilege and the Plaintiff lacked sufficient facts to overcome it. In *Owen v. Liberty University*, this court held that a Plaintiff graduate student failed to state a claim for defamation against certain Liberty University officials and instructors as their allegedly defamatory statements were qualifiedly privileged. There, this court found that, and instructor in a PhD program and faculty member had an "'interest or duty' in measuring the fitness of doctoral candidates like Plaintiff. Thus, the Court holds that Dilella's communication was qualifiedly privileged." *Owen v. Liberty Univ.*, No. 6:19-CV-00007, 2020 WL 1856798, at *13 (W.D. Va. Apr. 13, 2020), aff'd, No. 20-1596, 2022 WL 127894 (4th Cir. Jan. 13, 2022). Because the Plaintiff simply repeated the Defendants were guilty of malice, without factual

allegations to support that conclusory allegation, her claims failed to overcome the privilege. In its opinion, this court stated,

> At bottom, Plaintiff's complaint lacks well-pleaded factual allegations which, taken as true at this stage of the case, plead malice required to displace the qualified privilege. And Plaintiff's bare, "[r]epeated assertions that a party acted with malice or with a motive of personal spite is not sufficient; rather, such conclusory language does not state a claim for malice if the facts as alleged cannot support a finding as such." *Ortiz v. Panera Bread Co.*, No. 1:10-cv-1424, 2011 WL 3353432, at *5 (E.D. Va. Aug. 2, 2011) (internal citations omitted); *see Zarelli v. City of Norfolk*, No. 2:13-cv-447, 2014 WL 2860295, at *11 (E.D. Va. June 23, 2014) (dismissing defamation claim for failure to plead more than conclusory allegations of malice)."

The *Owen* case is very similar to this case, where inadequate factual allegations support overcoming the qualified privilege. Accordingly, the Counterclaim should be dismissed because it relies on privileged statements to allege defamation and offers insufficient conclusory allegations to overcome the privilege.

Later in 2020, this court also dismissed a defamation claim with prejudice where the Plaintiff sued Liberty University officials and third parties but failed to overcome the qualified privilege by not alleging sufficient facts supporting malice. In *Leitner v. Liberty Univ., Inc.*, No. 6:19-CV-00029, 2020 WL 7128972, at *12 (W.D. Va. Dec. 4, 2020), a graduate student sued for defamation based on certain communication from university officials and third parties about her participation in the program, as well as internal and external internships. In that case, this court found the qualified privilege attached to the communications in question, and there were insufficient allegations to overcome the privilege. This court explained

> Plaintiff also fails to allege any facts that would demonstrate malice sufficient to defeat an assertion of qualified privilege. Furthermore, because the Liberty Defendants' allegedly defamatory statements appear to be internal communications, Dkt. 17 ¶¶ 236, 272, 436, Plaintiff's defamation claims also fail because she has not alleged "publication" of any defamatory statements. *Schaecher*, 772 S.E.2d at 594.

Thus, there are prior decisions where this court has determined that making insufficient factual allegations and failing to overcome a qualified privilege can doom a defamation claim. Those cases

13

are strikingly like this one, in that there are no allegations of publication by Ms. Doe in the Counterclaim which occurred in a clearly non-privileged setting. Under these circumstances, the Counterclaim should be dismissed with prejudice, just like the claims in the *Owen* and *Leitner* cases were.

> 2. **The Counterclaim fails to state a claim for defamation because certain of the statements which are absolutely privileged as part of judicial proceedings**

The Counterclaimant alleges his employment was terminated due to "media reports" following the original Complaint in this action. The Counterclaim states in relevant part, "The rape allegation was republished on or about November 26, 2021, when the HR Manager of Tippett's employer read news accounts of the allegation after Doe filed her Complaint." Dkt. No. 30 at ¶9. This allegation is insufficient to support a claim for several reasons. First, there are no allegations in the counterclaim that the "news accounts" referenced contained actionable statements by Jane Doe independent of her privileged communications to the Title IX office, or the absolutely privileged statements in this case. *Id*. Second, based on allegations in the Counterclaim, the media reports in question were the publications "…after Doe filed her Complaint" in this case. *Id*. Essentially, the Counterclaim itself makes clear that the news media coverage of this lawsuit was the reason for the end of the employment relationship. Ms. Doe never spoke to the media as a part of any identified reports, and her allegations in this lawsuit being covered in the media does not afford the Counterclaimant a cause of action for defamation against her. This is because her statements during these proceedings are absolutely privileged since they occurred during a judicial proceeding. The Counterclaimant fails to state a claim for defamation where he relies on absolutely privileged statements made during these proceedings, and this justifies dismissal of the Counterclaim as a matter of law.

Virginia state and federal precedents allow for absolute immunity in quasi-judicial proceedings in a variety of contexts. *See Mansfield v. Barnebei*, 727 S.E.2d 69, 73 (Va. 2012), (Absolute judicial privilege applied to allegedly defamatory statements in draft complaint sent for settlement purposes.), *Van Vleck v. Sallyport Glob. Holdings, Inc*., No. 1:19-CV-60, 2019 WL 2273845, at *3 (E.D. Va. May 28, 2019) (applying *Mansfield,* finding absolute privilege for anticipated or actual litigation statements obtained by a law firm investigating workplace allegations of misconduct, and that the statements were privileged even when originating from someone other than the person contemplating bringing the proceeding.), *Givago Growth, LLC v. iTech AG*, LLC, 300 Va. 260, 863 S.E.2d 684 (2021) (the filing of a *lis pendens* is part of a judicial proceeding for purposes of establishing absolute privilege against a defamation claim).

Certain administrative proceedings may also be occasions which afford an absolute privilege because they are considered quasi-judicial proceedings. In evaluating whether a Title IX administrative process could be considered a quasi-judicial proceeding, the nature of the proceedings is at issue. Where proceedings afford right to personal representative, impose penalties for perjury, or have other characteristics in common with court proceedings, the absolute privilege can apply. The power to subpoena documents, compel testimony, or afford remedies available at law, are all the kinds of things that may render an administrative proceeding to be quasi-judicial in nature, and therefore provide a basis for the absolute privilege.

Many types of administrative proceedings have been deemed to be quasi-judicial if they are sufficiently similar to court proceedings. This privilege can apply to administrative proceedings even where a subsequent claim is possible in court, such as EEOC proceedings. In ruling that EEOC proceedings are quasi-judicial in nature, warranting the application of the absolute privilege, the Eastern District of Virginia emphasized the EEOCs power to subpoena documents,

15

information and witnesses, and its power to file a lawsuit at the conclusion of the proceedings. *See Shabazz v. PYA Monarch, LLC*, 271 F.Supp.2d 797, 803 (E.D.Va. 2003). *See also Katz V. Odin, Feldman & Pittleman*, P.C., 332 F.Supp.2d 909, 919 (E.D.Va. 2004). The Supreme Court of Virginia has held that in analyzing whether a proceeding is quasi-judicial, "The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi judicial powers. It applies to communications made before tribunals having attributes similar to those of courts." *Katz* at 919, citing *Penick* at 627-28. (citation and quotation omitted). In *Katz* the Eastern District held that an arbitration procedure was "sufficiently similar to a judicial proceeding to warrant the applicable of an absolute privilege to all statements made in connection with such a proceeding." *Katz* at 919.

Because the complainant and respondent are entitled to seek representation, to request and obtain documents, cross examine witnesses, and the decisionmaker can impose a penalty of expulsion or exclusion from campus, based on the procedural protections afforded during the process, the Title IX process likely qualifies a quasi-judicial proceeding. In essence, the procedural and due process afforded to the parties throughout Title IX process are sufficiently like judicial proceedings to warrant the application of the absolute privilege. Thus, all statements gathered as part of the Title IX process would be afforded absolute privilege and could not provide the basis for a defamation claim. Connecticut and Virginia follow similar legal principles in evaluating this issue, in that both states afford quasi-judicial proceedings absolute immunity where certain procedural safeguards are in place. A Connecticut federal court has ruled that a private university's Title IX process could be considered a quasi-judicial proceeding sufficient to allow absolute immunity for all statements made through that process, to promote the full participation in that

16

process, and in accordance with applicable state law. *See Khan v. Yale Univ.*, 511 F. Supp.3d 213 (D. Conn. 2021) (Under Connecticut law regarding absolute immunity for statements made in the context of judicial and quasi-judicial proceedings, participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits.). Under these circumstances, Ms. Doe is likely entitled to invoke the absolute privilege. If she is not protected by the absolute privilege, she is at least protected by the qualified privilege, as further explained below.

3. **The Counterclaim fails to state a claim for defamation because all of the statements supporting the claim are qualifiedly privileged and there are no allegations of actual malice, which must proven by clear and convincing evidence.**

The Counterclaimant will attempt to argue Doe's statements during the underlying Title IX investigation are defamatory, even though all of her statements are qualifiedly privileged, and there are no allegations the privilege was lost. In this case, the only recitation of any *mens rea* adequate to even relate to this issue is that "Doe willfully, intentionally and maliciously accused Tippett of rape with the intent of causing damage to his reputation and other damages." Dkt. No. 30, ¶17. However, this allegation is insufficient to state a claim of actual or common law malice, and there are no facts to support this conclusory allegation of malice. In fact, the statements concerning why Doe made the report are omitted from the Counterclaim, even though the Counterclaimant's counsel obtained those during discovery. Still, her belief that she could not consent due to intoxication, is not evidence of actual malice. Further, considering the context outlined in the Complaint, there are nearly no factual allegations about her state of mind, let alone those which could constitute clear and convincing evidence, of actual malice.

Virginia law requires proof of actual malice in defamation cases where the statements were qualifiedly privileged. In the context of defamation, actual malice is either knowledge that the

17

statements are false, or disregard for the truth or falsity of the allegations. Here, there are no allegations concerning reckless disregard for truth, so it appears that the only viable basis for punitive damages is knowledge of actual falsity. Yet, the Counterclaim itself contains specific information about why Ms. Doe believed she had been raped, namely, that she lacked the capacity to consent due to intoxication, and the Counterclaimant himself stated, "Wow, you're so drunk." Dkt. No. 30 ¶6(e). Under these circumstances it is not plausible to argue that Ms. Doe's knew her allegations are false by clear and convincing evidence sufficient to support an award of punitive damages, or to overcome the qualified privilege. Accordingly, the Counterclaim fails to allege a sufficient basis for the award of punitive damages and these statements were qualified under these circumstances.

    **4. The Counterclaim fails to state a claim for defamation as it was filed beyond the relevant statute of limitations for certain of the referenced statements**

Because the law requires defamation actions to brought within one year of the defamatory statements, all statements published prior to April 14, 2021, cannot support a defamation claim as they are untimely. This is problematic for the Counterclaimant, as Ms. Doe's April 16, 17, 2021 statements are nearly identical to her initial complaint to the Title IX office in November 2020. Thus, there appear to be several statements referenced in the Counterclaim which were made more than one year before filing of the counterclaim, and such statements cannot, as a matter of law, support a claim for defamation. Similarly, for statements which are undated, those too cannot support a claim for defamation because there are no specific allegations about how the statements were defamatory. Failure to articulate sufficient factual support can doom a claim as untimely. *See Johnson v. Hill*, 965 F. Supp. 1487, 1489 (E.D. Va. 1997), dismissing an action filed after the applicable statute of limitations because "… the events of which plaintiff complains occurred more than two years before this action was brought." Here, the statements concerning the rape were

initially published in November 2020 and reaffirmed in a qualifiedly privileged context in April 2021 and again in an absolutely privileged context of this case in November 2021. The allegations in the Counterclaim are so vague and imprecise they fail to demonstrate when, where, or to whom the allegedly defamatory statements were made.

## VI. CONCLUSION

For the reasons stated above, and for those reasons articulated at a future hearing, Ms. Doe respectfully requests that the Counterclaim be dismissed with prejudice.

Dated: May 19, 2022                             Respectfully submitted,

/s/ Kevin E. Byrnes
Kevin E. Byrnes, VSB No. 47623
Grace Williams, VSB No. 88103
**FH+H**
1751 Pinnacle Drive, Suite 1000
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fhhfirm.com
gwiliams@fhhfirm.com

*Counsel for Plaintiff/Counter-Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2022, the forgoing Brief in Support of the Motion to Dismiss the Counterclaim was served on all counsel of record in this matter via the court's electronic filing (ECF) system.

/s/ Kevin E. Byrnes
Kevin E. Byrnes, Esq.