CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/30/2022
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JANE DOE, <br><br> *Plaintiff*, <br><br> v. <br><br> LIBERTY UNIVERSITY, INC., *et al.*, <br><br> *Defendants*. | CASE NO. 6:21-cv-00059 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiff has sued Liberty University and another student at Liberty, alleging that student raped her and, when Plaintiff reported it to the Title IX office, Liberty was deliberately indifferent to her sexual assault claim and later retaliated against her. She also sued the other student for assault and battery.

This decision concerns Plaintiff's request to proceed anonymously as "Jane Doe," at the same time she has repeatedly, publicly identified the accused student-defendant—whom she alleges is a "rapist." Thus, on account of Plaintiff's drafting of her complaint, the student-defendant cannot be afforded privacy in defending against this suit. While Title IX and sexual assault cases often proceed with anonymous litigants, typically both the alleged accuser and alleged accused are afforded those privacy protections. The Court finds, upon consideration of the relevant factors, that Plaintiff has not established her request for anonymity that would only apply as to her while the student defendant would be publicly named. The Court will deny Plaintiff's ability to proceed under a pseudonym but will afford her the opportunity to amend her complaint to include her name.

Background

As recounted in her complaint, Plaintiff alleged that in October 2020, she was subjected to date rape by an individual Defendant she named in the complaint—then a student at Liberty University—who allegedly used alcohol and a "roofie" to render Plaintiff incapacitated, raped her, and impregnated her. Dkt. 1 ("Compl.") at 1. Plaintiff alleged that when she reported the matter to Liberty, it "deterred" her from "taking proper steps to pursue her perpetrator," and instead shifted the focus onto Plaintiff's consumption of alcohol, thereby "allow[ing] her rapist to graduate unscathed." *Id.* at 1–2.

Plaintiff alleged that she began attending Liberty in 2019 and anticipated graduating in 2022. *Id.* ¶ 7. Plaintiff alleged that she mainly decided to attend Liberty because it reflected her religious and social values, including a belief against pre-marital sexual activity. *Id.* ¶¶ 10–11. Before October 30, 2020, Plaintiff considered the Named Defendant a friend, and she "had no romantic relationship with him of any kind." *Id.* ¶ 15. The Named Defendant was aware that Plaintiff was dating another student, and Plaintiff believed that the Named Defendant had a girlfriend at the time, as well. *Id.* ¶¶ 14–15.

On October 30, 2020, Plaintiff visited the Named Defendant's apartment, which was an off-campus apartment located in Lynchburg. *Id.* ¶¶ 16, 18. Plaintiff alleged that when she visited the Named Defendant was alone, though Plaintiff had discussed getting together with others as well, and "was under the impression that they would socialize as a group." *Id.* ¶ 19. While there, Plaintiff alleged that the Named Defendant gave her "at least two" "hard" iced teas, which she says typically carry between 5 and 8 percent alcohol by volume. *Id.* ¶ 17. Plaintiff alleged that the Named Defendant then offered her a third alcoholic beverage, which he prepared himself "outside of the view of Doe," unlike the prior two drinks. *Id.* ¶¶ 20–21. Within 20 minutes of

consuming the third drink, Plaintiff alleged that she "lost consciousness and was incapacitated physically and mentally." *Id.* ¶ 22.

When Plaintiff regained consciousness, she alleged that she "realized her clothes had been stripped." *Id.* ¶ 23. Plaintiff alleged that then the Named Defendant "forcibly engaged in sexual intercourse with [her], without consent, using force and against her will." *Id.* ¶ 24. She further alleged that she "recalls being unable to speak or move her limbs and she was groggy and unable to resist or protest." *Id*. After the Named Defendant "eventually stopped raping [Plaintiff]," he "threw [her] clothes at her and demanded she leave." *Id.* ¶ 25. Then, Plaintiff alleged that when she "was unable to coherently respond," the Named Defendant "told her to get in his vehicle and he drove her to her apartment and dismissed her [from] the vehicle." *Id.* ¶ 26.

Plaintiff alleged that the next day she was "battered and bruised," "experienced severe chest pain and had multiple bruises on her shoulder and legs, which were consistent with the use of force to hold her down and assault and battery her." *Id.* ¶ 28. She went to Lynchburg General Hospital, reported being raped, and a "rape kit" was administered. *Id.* ¶ 27.

In early November 2020, a representative from Liberty's Title IX office contacted Plaintiff, however, she alleged that she was still "traumatized, embarrassed, and humiliated from the rape," and she was "reluctant to speak." *Id.* ¶ 30. She also alleged that she was reluctant to speak because of Liberty's alleged "[f]ailure to protect other victims of sexual assault," and that she was "aware that [Liberty] tended to focus on the behavior of the victims." *Id.* ¶¶ 30–31. And since "she had consumed alcohol," Plaintiff was "concerned that she would be targeted for this infraction, but the rape would go unpunished." *Id.* ¶¶ 31–32. Plaintiff alleged that she told the Title IX representative "that she had been sexually assaulted," but Plaintiff was "uncomfortable telling the University that a student had raped her." *Id.* ¶¶ 33–34. Liberty's Title IX office was

apparently first made aware of the Named Defendant when "a professor had reported [him] as the assailant." *Id.* ¶ 34.

About three months later, Plaintiff visited Liberty's Title IX office and had a four-hour meeting with a Title IX representative. *Id.* ¶ 35. During that meeting, Plaintiff disclosed the Named Defendant as her assailant. *Id.* Plaintiff alleged that while she was informed that she could file a formal complaint, the representative "lobbied her to pursue the informal mediation option," advising her that if she chose to file a formal complaint, "she would need to face [the accused] directly in the same room." *Id.* ¶ 36.

In the spring of 2021, Plaintiff alleged that Liberty's Title IX office sent an email jointly to herself and the Named Defendant "setting forth [her] claims against [him]." *Id.* ¶ 38. She also alleged that Liberty advised her that "her only recourse" was to enforce "the school's honor code, 'the Liberty Way'," and "not to pursue him for rape." *Id.* ¶ 39. Plaintiff further alleged that Liberty "failed to explain the process" to her for nine months, and seemingly tried "to dissuade [her] from taking action." *Id.* ¶ 43. Plaintiff alleged that "[w]hen she did decide to move ahead, they stalled the process, allowing the rapist to graduate unscathed." *Id.* "Only after this was [Plaintiff] advised that Liberty refused to act because the assault took place off campus, a fact clearly known to the University at an early stage of the process." *Id.*

Later in the summer of 2021, Plaintiff alleged that the director of an internship she was participating in "expressed an intention to terminate [her] from that internship" because she "intended to take legal action against the University (for the violation of Title IX)." *Id.* ¶ 44. She alleged that certain following actions in relation to her internship triggered "alarm" that "she was being frozen out of her internship and effectively fired due to a perception that [she] was going to sue Liberty University." *Id.* ¶ 47.

Plaintiff alleged that she became pregnant due to the rape, and while she sought to carry the pregnancy to term, she miscarried after eleven weeks. *Id.* ¶ 40. Plaintiff has also alleged that she has shown signs of post-traumatic stress disorder, including difficulty focusing in and out of academics, and struggles with flashbacks. *Id.* ¶ 42.

In November 2021, Plaintiff filed suit against Liberty and the Named Defendant. Dkt. 1. In her complaint, Plaintiff raised seven counts. Plaintiff raised the following against Liberty only: (Count 1) "Pre-Assault Deliberate Indifference/Hostile Environment"; (Count 2) "Post Assault Deliberate Indifference"; (Count 3) "Hostile Environment"; (Count 4) "Negligence"; and (Count 7) "Retaliation under Title IX." *Id.* at pp. 19–21, 23–25. Plaintiff also raised two claims against the Named Defendant: (Count Five) "Assault"; and (Count Six) "Battery." *Id.* at pp. 21–23.

The Named Defendant has filed a motion to dismiss Plaintiff's complaint for failure to comply with Fed. R. Civ. P. 10(a), for failure to include Plaintiff's name in the complaint, and motion to strike pursuant to Fed. R. Civ. P. 12(f) for substantially the same reasons. Dkts. 10, 11. This decision solely concerns the Named Defendant's motion to dismiss and strike.[1] Liberty, for its part, has subsequently filed an answer as to Counts Two and Seven. Dkt. 18. Those, Liberty argued, "at least state viable claims under Title IX for deliberate indifference and retaliation," though Liberty states that it will still defend those grounds and challenge them at a later stage of litigation. Dkt. 16 at 2. Liberty also filed a pending motion to dismiss Counts One, Three, and Four, pursuant to Fed. R. Civ. P. 12(b)(6). Dkts. 15, 16. The Court will resolve Liberty's motion to dismiss in a separate decision.

---

[1] The Named Defendant also subsequently filed a counterclaim for defamation against Plaintiff. Dkt. 30. Plaintiff later filed a motion to dismiss the Named Defendant's counterclaim, the merits of which will be addressed in a future decision.

Law

Under Rule 12(f) of the Federal Rules of Civil Procedure, "a court may strike from any pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Fourth Circuit has explained that "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). A ruling on a motion to strike is one entrusted to a district court's discretion. *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 324 (4th Cir. 2018).

The Federal Rules require that "[t]he title of the complaint must name all the parties," while "the title of other pleadings, after naming the first party on each side, may refer generally to other parties." Fed. R. Civ. P. 10(a). That requirement is more than mere formality. It "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021). Moreover, the Court must be cognizant of the "general presumption of openness of judicial proceedings," though that "operates only as a presumption" and "under appropriate circumstances anonymity may, as a matter of discretion, be permitted." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Since litigation under a pseudonym "undermines the public's right of access to judicial proceedings," the Fourth Circuit has held that "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe v. Public Citizen*, 749 F.3d 246, 273–74 (4th Cir. 2014). Allowing a litigant to proceed anonymously is a "rare dispensation." *James*, 6 F.3d at 238.

The Fourth Circuit in *James* explained that courts consider various factors in making this determination, including: (1) "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature"; (2) "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties"; (3) the ages of the persons whose privacy interests are sought to be protected"; (4) whether the action is against a governmental or private party"; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *Id.* However, some of these factors may not be relevant in a particular case, while others may be. *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:19-cv-249, 2020 WL 1287960, at *3 (W.D. Va. Mar. 18, 2020).

## Analysis

The Named Defendant's position is as follows. Plaintiff failed to include her name in the complaint, choosing to "proceed anonymously under the pseudonym 'Jane Doe.'" She has done so without a prior motion requesting the Court's permission to so proceed. Yet, while Plaintiff has sought to avail herself of the protections from such anonymity in this case, she has identified the Named Defendant "by his real name in the Complaint, falsely accusing him of rape." Dkt. 11 at 1. The Named Defendant writes that "some cases involving sexual misconduct allegations have allowed a plaintiff to proceed anonymously," however he further notes that "in those cases the relevant parties have usually *both* been identified only by pseudonym to preserve privacy." *Id.* at 4. In this case, by contrast, the Named Defendant asserts that Plaintiff sought to unfairly hold him "up to public opprobrium by identifying him in this lawsuit," while Plaintiff "hides behind the veil of anonymity." *Id.* The Named Defendant introduced a declaration attesting that

7

he was terminated from his employment "as a direct consequence of the plaintiff naming [him] in this lawsuit" and that his naming "is impeding [his] efforts to find another job in the fields [he] would like to work." Dkt. 20-1 ¶¶ 3–4. The Named Defendant argues that the relevant *James* factors weigh against affording Plaintiff unilateral anonymity. As a result, the Named Defendant asserts that the Court should strike all allegations in the Complaint and dismiss for failure to comply with Fed. R. Civ. P. 10(a). *See* Dkt. 11 at 6.

Plaintiff counters that the Named Defendant's motion should be denied and that the relevant *James* factors weigh in favor of affording her leave to proceed anonymously. Dkt. 19. Plaintiff argues that the allegations of rape, miscarriage and PTSD are "among the most private and sensitive matters," therein weighing in favor of anonymity. *Id.* at 4–5. Plaintiff agrees that authority supports the Court's "power to grant anonymity to both parties, were it to choose to do so." *Id.* at 5. She also contends that since she still attends Liberty, identification poses a risk of physical or mental harm to her, or third-party witnesses, especially since her "allegations concern issues which have recently attracted significant media attention and triggered social media campaigns …." *Id.* at 5–6. Plaintiff concedes that "she is not a minor," but argues that as college students, her age still supports greater privacy. *Id.* at 7–8. Plaintiff also argues that the other *James* factors weigh in favor of anonymity. *Id.* at 8–9. Significantly, Plaintiff argues that the Named Defendant's point about "basic unfairness" of her complaint affording her anonymity while naming him "somewhat misses the true inquiry." *Id.* at 10. In Plaintiff's view, "[h]ad the [Named] Defendant wished to proceed anonymously, he could have so moved the court," but "[h]e has not." *Id.*

At the outset, the Court must emphasize the rare posture that this Court is confronted with a substantial motion challenging party anonymity and seeking dismissal for a Rule 10(a) violation. That is even rarer, given that this is a Title IX case alleging rape. However, this was an

entirely preventable issue, solely of Plaintiff's own making. This Court and others in the Fourth Circuit frequently have afforded litigant anonymity in Title IX claims concerning sexual assault or rape. *See, e.g.*, *Doe v. Washington & Lee Univ.*, 439 F. Supp. 3d 784 (W.D. Va. 2020); *Doe v. Washington & Lee Univ.*, No. 6:14-cv-52, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573 (E.D. Va. 2018); *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 568–69 & nn. 1–3 (D. Md. 2021). In this case, as in other such cases, claims of sexual assault concern "matter[s] of [a] sensitive and highly personal nature." *James*, 6 F.3d at 238; *see also* Dkt. 19 at 4. Had Plaintiff filed a complaint in which she identified herself as Jane Doe and Named Defendant as "John Doe"—*i.e.*, providing anonymity both for herself and the accused—the Court would have granted the request for relief with little hesitation. Indeed, as Plaintiff concedes, *id.* at 5, privacy interests of both accused and accuser in a sexual assault case support a determination that both sides be allowed to proceed anonymously. *See, e.g.*, *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593–94 (E.D. Va. 2016) (holding that "what justifies the use of pseudonyms here is plaintiff's status as an accused perpetrator of sexual misconduct—a rapist"). Furthermore, affording anonymity to an accused perpetrator of sexual misconduct can also have the effect of supporting the anonymity of the alleged victim. *See id.* at 593–94 & n. 20.

Plaintiff's litigation posture and framing of her complaint establish that Plaintiff has sought to avail herself of the protections of anonymity (without prior Court order), all the while single-handedly precluding the Named Defendant from the ability to avail himself of similar protections. She named him as a Defendant in the caption of the case; identified the Named Defendant nearly 60 times in the complaint; and called the Named Defendant a "rapist" right in the introduction of the complaint. Dkt. 1 at 2. Equity does not support parties' strategic use of litigant anonymity as both sword and shield.

Plaintiff's privacy double-standard relates most closely to *James* factors four and five. *See James*, 6 F.3d at 238 (asking "whether the action is against a governmental or private party," and "relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously"). Because "the mere filing of a civil action against … private parties may cause damage to their good names and reputation," courts have held that "[b]asic fairness" generally dictates that plaintiffs who publicly sue defendants in civil suits "must [sue] under their real names." *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *accord Doe v. Pittsylvania County, Va.*, 844 F. Supp. 2d 727, 730 (W.D. Va. 2012) (citing principle from *Wynne & Jaffe*).

That concern is not merely academic here. The Named Defendant submitted a declaration under oath in which he attested that he was fired when his former employer learned he was named as the defendant in this case, and that such publicity has further diminished his job prospects. *See* Dkt. 20-1.[2] But the fact that the Named Defendant (and Liberty) have knowledge of Plaintiff's identity and are therefore able to prepare a defense on that basis does not mean there is no unfairness. It only means that the Named Defendant is not as prejudiced in defending this case as he otherwise might have been. *See Doe v. Court of Common Pleas of Butler County, Pennsylvania*, No. 17:cv-1304, 2017 WL 5069333, at *3 (W.D. Pa. Nov. 3, 2017) (explaining that, "[i]f Plaintiff were permitted to proceed anonymously, Defendants would be placed at a

---

[2] That is not to say that adverse repercussions cannot follow from one's bad conduct as found in litigation or a criminal proceeding and must be shielded from public scrutiny. That is especially true were this case to proceed to trial or final judgment. *Cf. Doe v. Settle*, 24 F.4th 932, 939 n.5 (4th Cir. 2022) (questioning whether registered sex offender would have a right to proceed anonymously because "reveal[ing] his sex-offender status to the public" is "what the sex-offender registry does").

10

serious disadvantage, for they would be required to defend themselves publicly while plaintiff could make her accusations behind a cloak of anonymity") (cleaned up). *James* factors four and five still weigh in Named Defendant's favor, that he should have been afforded the opportunity to proceed anonymously.

Plaintiff attempts to foist responsibility for his public naming onto Defendant, arguing that he could have filed a motion for leave to proceed under a pseudonym. *See* Dkt. 19 at 10 ("Had the Defendant wished to proceed anonymously, he could have so moved the court."). The Court considers the argument unpersuasive. Any additional utility that could have been gained by taking such steps would have been marginal at best—likely as effective as attempting to put toothpaste back in the tube.

Another plaintiff's attempt to litigate under asymmetric anonymity has recently prompted another court in this District to deny the plaintiff's motion to proceed under a pseudonym. In that case, the plaintiff (the party accused of committing sexual assault), filed suit against Virginia Tech, seeking leave to proceed under a pseudonym, while also extensively referencing the names of two nonparties (alleged victims) in the complaint. *See Doe v. Va. Polytech. Inst. & State Univ.*, No. 7:21-cv-306, 2022 WL 67324, at *4 (W.D. Va. Jan. 6, 2022) ("*Doe v. VPI*"). In that case, the court found that "it appears plaintiff in this case is not seeking to preserve her own privacy in any legitimate way," but "[i]nstead, she seeks privacy while naming two non-parties … who assert that they are the plaintiff's victims." *Id.* That court also considered the request for anonymity undermined by the plaintiff's inclusion of photographs of herself in the complaint. *Id.* The court concluded, "[g]iven the fact that plaintiff decided to name others repeatedly and include photographs of herself and another, the court cannot, and does not, find that her motion to proceed under a pseudonym is genuinely for the purpose of preserving her privacy and avoiding retaliatory harm." *Id.* To be sure, the litigants' posture in that case was reversed. The

11

alleged perpetrator of sexual assault had sought anonymity while naming victims, but in this case, the alleged victim filed suit and is seeking anonymity while naming the alleged perpetrator of sexual assault. Moreover, the Court is cognizant that there may be considerations unique to that posture at issue in *Doe v. VPI* that may require additional inquiry whether the alleged perpetrator was further seeking to victimize the alleged victims by naming them. However, at bottom, courts have recognized that sexual assault Title IX cases concern matters of a "sensitive, and highly personal nature," supporting the preservation of privacy both for alleged victims as well as alleged perpetrators of sexual misconduct.

    The Court therefore finds that *James* factors one, four and five are most significant in this case. The Court further notes for the sake of completeness as to *James* factor three, that the ages of the litigants may provide some additional support for anonymity for both parties, and that even though they are not minors, they were college-age students at the time of the alleged rape. Finally, the Court has taken into account Plaintiff's arguments concerning whether there is a risk of retaliatory physical or mental harm, on account of her identification, *i.e.*, *James* factor two. *See* Dkt. 19 at 5–7. Concerns about stigma in cases such as this are not lightly brushed aside, especially given the substantial authority recognizing privacy interests. Nor does the Court seek to minimize difficulties Plaintiff may face on account of her identity in this case being made public, given its sensitive subject matter. However, the Court also notes that any such concerns are lessened on account of Plaintiff's allegation she intends to graduate from Liberty this year, so reducing her profile and the opportunity for retaliation which Plaintiff alleges she'll face. *See* Compl. ¶ 7.

    At bottom, the Court concludes that Plaintiff has violated Fed. R. Civ. P. 10(a) by filing the complaint without including her name. Moreover, in consideration of the *James* factors, the Court concludes that they do not support Plaintiff's request for unilateral anonymity, where she

has already identified Named Defendant. Nonetheless, the Court finds that the remedy sought by the Named Defendant—striking the entirety of the case and dismissing Plaintiff's complaint against him—is excessive. *See* Dkt. 19 at 12 (Plaintiff arguing in alternative for leave to amend rather than striking the complaint altogether).

Accordingly, the Court, in an accompanying Order to follow, will grant in part Named Defendant's motion to dismiss, deny Plaintiff's request to proceed under a pseudonym, and permit Plaintiff fourteen (14) days whether to file an amended complaint, which identifies Plaintiff, or to file a notice of voluntary dismissal as against Named Defendant. *See Doe v. VPI*, 2022 WL 67324, at *4; *see also Doe v. VPI*, No. 7:21-cv-306, Dkt. 23 (W.D. Va. Jan. 6, 2022) (ordering Plaintiff to file an amended complaint that identifies the plaintiff and uses appropriate pseudonyms for non-parties).

The Clerk of Court is directed to send this Memorandum Opinion to counsel of record.

ENTERED this __30th__ day of September, 2022.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE